**FORD v COLUMBUS MUTUAL LIFE INS CO**

Ohio Appeals, 4th Dist, Ross Co
Decided May 16, 1930

Kenneth T. Stevens, Chillicothe and Jospeh G. Cox, Gillespieville, for Ford.
John P. Phillips, Chillicothe and Lewis Stout, for Insurance Co.

MAUCK, J.

In the answer and cross petition it is alleged that the premises described in the petition were conveyed by the plaintiff to Herbert C. Sherman as trustee for and on behalf of these answering defendants on December 26, 1926, and the evidence shows that while the deed from the plaintiff to the Fords was dated in October, 1926, it was actually made and delivered December 16, 1926, and that on December 26, 1926, Oakley Ford and Cora M. Ford conveyed it to Herbert C. Sherman, trustee, subject to the mortgage. In the deed from the plaintiff to the Fords there is this recitation:

"Possession of said premises is to be given grantees by the grantors so far as may be done at the date of this deed, subject to the rights of the tenant on farm, Lewis F. Metcalf, whose lease expires March 1, 1927."

This recitation is omitted from the deed made by the Fords to Sherman. It is to be observed that from December 26, 1926, the title to this property was in Herbert C. Sherman, trustee, and that Mr. Sherman filed no pleadings in the case and is not now complaining of the judgment. It will be further observed that the cross action seems to be based upon the claimed violation of no provision or condition in the deed of conveyance but upon two entirely different contracts. One was the contract preceding the conveyance of the real estate by which the plaintiff agreed to sell to the Fords certain personal property as well as the real estate in question, and the other contract was claimed parol agreement between certain agents of the plaintiff and Ford. From the outset of the trial the plaintiff resisted the attempts of the defendants to prove this latter claimed agreement and no proof was made by Mr. Ford of any violation by the plaintiff of any duty it owed with reference to the personal property. Considerable testimony was adduced tending to show that on March 1, 1927, the Fords attempted to move into the dwelling house on the farm in question and that Metcalf, then occupying the premises, resisted their efforts. It further appears that Mr. and Mrs. Metcalf had formerly owned the farm, that they had lost it and that Mrs. Metcalf, not appreciating the fact that the farm had been lost by them, would not give up the place. It appeared that Ford had taken steps to bring forcible detention proceedings and was at the same time appealing to the plaintiff to assist him in getting the possession to which he was entitled. Thereupon, in early March Mr. Ranier and Mr. Backus met Mr. Ford in Chillicothe and advised with him in reference to getting Metcalf out of the house. Mr. Rainer was an employe of the plaintiff. His general duties were to look after farm lands in which the plaintiff was interested and prior to the sale of the land in question to Mr. Ford had looked after this land. By virtue of this he knew Metcalf and sympathized with the misfortunes of the latter and the apparently unhappy condition of Mrs. Metcalf. Mr. Backus was a director and assistant treasurer of the plaintiff corporation. There is nothing in the record to show what powers he had as an officer of the company except as they are indicated by the names of these offices. Mr. Ranier,

Mr. Backus and Mr. Phillips advised Mr. Ford that persuasive rather than coercive measures be employed; that forcible detention proceedings would not be speedy because the local officers would be in sympathy with the Metcalfs. Thereupon Mr. Phillips and Mr. Backus conferred with the Metcalfs and secured the latter's promise to vacate on March 21. This was communicated to Mr. Ford. He adopted the suggestion, did not push his forcible detention proceedings and obtained peaceable possession about the time promised. Mr. Ford testified, however, that he told Mr. Backus when informed that the Metcalfs would vacate on March 21 that "he would take $100 a day for the first thirty days damage. He said they would have to pay me my damage." This last quoted sentence was stricken out over the defendant's objection and is one of the refusals of testimony of which the plaintiff in error now complains.

Another question of like import saved is thus disclosed, Mr. Ford being on the witness stand:

"Q Mr. Ford, you may now state to the court what Mr. Bachus said to you here in Chillicothe at the time you mention here, on or about the first of March, as to taking care of you and leaving the tenant stand where he was until they could get him out and they would recompense and pay you for your loss and damage therefor?"

The objection was sustained to this question. Counsel for the defendants made this statement:

"We expect the answer of the witness to be that Mr. Backus told him that he would take care of him in that manner and would pay and recompense him for any damages he might sustain."

Unless the court committed fatal error in the rejection of the testimony referred to the judgment must be affirmed. We have set forth the record with some fullness because it seems to afford its own answer to the complaints of the plaintiff in error.

1. It does not show that Mr. Sherman was a trustee for Mr. Ford and that the latter had a right to complain of Metcalf's holding over. This, of course, is somewhat technical and might be cured by an enlarged bill of exceptions.

2. The vital failure of the defendant's case lay in his attempt to predicate liability for an independent contract of indemnity on the casual utterance of a director of a corporation. **Bradford Belting Co. v. Gibson, 68 Oh St 442.** There is nothing in the record to indicate that there was any existing cause of action against the plaintiff in behalf of Mr. Ford on March 1. Mr. Ford by the acceptance of the deed, followed by the letter of his vendor to Metcalf, became the landlord for the tenancy of Metcalf and complete privity existed between these two. Nothing is shown to the effect that the plaintiff was to warrant the honesty or fidelity of Metcalf or be bound for any of the latter's defaults in complying with the terms of his lease, one of which was (we assume) to vacate the farm on March 1. The vendor was doubtless bound to Mr.

Ford if it be found that Metcalf had a right to hold over after March 1, but it was not responsible for his wrongful holding over. The plaintiff and its agents were consequently performing a gratuitous service in assisting Mr. Ford to secure possession and out of it arose no benefit to the plaintiff. There is consequently no analogy between this case and the doctrine of corporate ratification laid down in **Indemnity Co. v. Shovel Co., 112 Oh St 136,** because there is no correspondence in the facts. In that case the shovel company secured and retained valuable advantages inuring to it from the express contract of its secretary acting without authority. In this case there were no benefits flowing to the plaintiff. If, therefore, this action had been brought by the only party in interest shown by the record the testimony proffered would have been properly refused.

The record is free from error.

Middleton, PJ, and Blosser, J, concur.